Thank you. Madam Clerk, please call the first case of the morning. 152-1922, Clare Cole v. City of Chicago. Counsel, you may approach and begin. Good morning, Counsel. Your Honors, may it please the Court, my name is Sean Ryan on behalf of the City of Chicago. The issue before us today in this case is did the Cook County Circuit Court err in finding that the Commission decision dated 11-3-2014 was against the manifest way of the evidence? So you would agree we're reviewing the original Commission decision not the Circuit Court's order technically, right? Correct, Your Honor. The Commission decision 11-3-2014 and whether that decision, finding that Petitioner failed to prove that he sustained an accidental injury arising out of and in the course of his employment and failed to prove that a cause of connection existed between his condition of ill-being and his employment was against the manifest way of the evidence. That Commission decision was not against the manifest way of the evidence. Whether an injury arising out of and in the course of employment and whether a cause of connection exists are questions of fact to be resolved by the Commission. A factual finding will not be set aside unless it is against the manifest way of the evidence. So why did the Commission rule against the claimant? Were there some credibility issues that they had? Yes, the Commission in reviewing the entire record twice actually determined that Petitioner was not credible as to how repetitive or often he used the jackhammer and was not credible to his claim specific incident trauma. The Commission did not come to this decision based solely on Petitioner's testimony. They reviewed Petitioner's testimony, the testimony of witnesses, medical treatment records, work status reports to come to their determination that Petitioner was not credible in how often he, whether he used the jackhammer repetitively and whether he sustained a specific incident trauma if you will. The Commission began by looking at, in fact the Petitioner relied solely on his testimony as to how often he used the jackhammer. When that testimony was evaluated and was directly rebutted by the work status reports entered in evidence as well as the testimony of Petitioner's foreman who worked with Petitioner prior to the alleged incident and for some time before his accidental injury was claimed. Was there some kind of a gap between the last use of the jackhammer at work and the stroke? Was there some kind of a gap in there? As far as a gap in time? Yes. So Petitioner allegedly, the work status report showed that Petitioner used the jackhammer in I believe September 10th of 2007. Petitioner's then alleged injury where he had a vision issue was noted on October 9th, 2007. And so Petitioner, the treatment records as well as the work status reports do not support that Petitioner used the jackhammer as repetitively as he claimed and did not sustain a specific traumatic incident as he claimed. The Commission decision reviewed all of these pieces of evidence, properly admitted evidence to come to their decision that Petitioner failed to meet his burden. And it is his burden to show that he meets all elements of the claim. And the Commission rightfully so, as it is in their job and in their discretion to evaluate the evidence, to evaluate and judge the credibility of the witnesses. Counsel, we know what our standards are. Why don't you tell us what the evidence is? The evidence in this case clearly shows that Petitioner did not use the jackhammer as often as he claimed. That was through the work status reports as well as backed up by the testimony of Petitioner's foreman. Petitioner did not seek medical treatment that was contemporaneous with his alleged specific incident trauma being hit in the head with a jackhammer. The initial medical treatment records from October 9th show no recent hammering or trauma or traumatic incidents. All right, so there's some ostensible contradictions between the claimant's testimony and the medical records. What about the doctors? What about the medical opinions? How did they line up there? The medical opinions from Petitioner's treating physicians are that Petitioner suffered a carotid artery dissection and there was a blood clot that essentially led to oculation, vision loss. And it was work-related. And they believed it to be work-related. They based these opinions off of the history provided by Petitioner. And as the Commission noted, in their determination that Petitioner, the history was not credible. And thus, Petitioner's treating physicians' opinions were based on histories provided by Petitioner, which were rightfully so found to be lacking credibility. All right, so there's some conflict in the medical testimony. And the well-settled rule is it's up to the Commission to resolve the conflict, determine the credibility, and wait to be given to the opinions. But they've also made this argument. What about this argument that the Commission allows some inadmissible evidence? So there appeared to be a focus on the reference in the Commission decision to inadmissible hearsay. This was through Dr. Levin's reference to a reference of Dr. Allen's report. Is it your position it was not inadmissible hearsay? It is our position that to the extent the court finds that they even relied upon this, and I would argue that a mere reference to it is not a reliance upon this opinion, but the existence of it is nothing more than harmless error. That this is not because there is sufficient other admissible evidence in the record to justify and fully support the Commission's decision that any reference to the hearsay evidence would be harmless, as shown by what I believe would support us as the case of Greeney in the Industrial Commission. That was one in which the court found that the Commission had abused its discretion in admitting and considering inadmissible hearsay evidence. But ultimately what's important in that discussion and decision is that the court went on to say that the question remained, what was the effect of finding that the reports were improperly admitted? And they, in that decision, noted that the Commission, the Circuit Court, noted that the Commission referenced other admissible improperly admitted evidence in coming to their decision, just as the Commission did in this case. They went on and, as we said, they looked over not only Dr. Levin's testimony, which is where the inadmissible hearsay is. Are you conceding that it was error, but it was harmless error? Are you conceding that it was error? I'm sorry, can you repeat the question? Are you conceding that the statement of the report was error? That Dr. Levin's statements would be harmless error in this case. So you are saying it's error in the? I'm saying that if it is found that the Commission relied upon it to any degree, which I would argue that in their decision, which is a lengthy discussion of the entirety of the record and all the evidence they considered, that this is, as it was in their decision, furthermore in reference to it, furthermore that it's just a factor, a small one, a side note reference that they went over in considering all the admissible evidence. And what they came to. Okay, Levin is the doctor that supports your position, is that correct? Levin is the independent medical examiner of the respondent, correct? Yeah, well, so be it. Okay, supports your position, right? Yes. Okay. And this statement was embedded in Dr. Allen's report that Levin reviewed? Correct, Your Honor. Okay. And so you're thinking that that is error, correct? So to the extent that the Commission referenced, the reference that Dr. Levin made would, if it is found to be inadmissible evidence, hearsay, I would say would be harmless error. It is or isn't a hearsay, or is it acceptable under Wilson v. Clark? Is it hearsay or isn't it? You should consider it hearsay. You think it's hearsay? Yes. Okay. Well, if it was hearsay, is there another independent basis to admit it? We're just trying to pin down your position here. My position would be that this is not the, the focus should be whether the Commission decision was against the manifest way of the evidence or not. Come on, come on, come on, come on. We know what the, we're asking you a question on a piece of evidence. You've got to take a position on it. This evidence, this piece of evidence would be considered, I would acknowledge that it would be considered inadmissible hearsay. Levin's an expert, isn't she? Yes. Can't she rely, is it reasonable for her to rely on Allen's reports? It is reasonable for her to rely upon. Is she entitled to testify what she relied on? She can. It doesn't come into substantive evidence, but it comes in as supporting the basis of her opinion. Under Wilson v. Clark, I would argue that she can rely upon this in coming to the basis of her opinion, that the evidence, Dr. Allen's statement does not have to be admitted into evidence for her to rely upon it. So upon further review, you're taking the position it's not error? I would take the position that I would argue and would argue that this is not inadmissible hearsay. However, if it is found to be, it is harmless error pursuant to the cases and the court's discussion in the Greeney v. Industrial Commission, as well as Weston Hotel v. Industrial Commission, in which it was considered, the court found that there was inadmissible hearsay, but they the correct reasoning is what was the effect of admission of inadmissible hearsay evidence? So if this court was to find that the evidence referenced in one line of the decision by the commission, that being Dr. Levin's reference to Dr. Allen's statement, then I would argue that the effect of that is that it is harmless error, that there is, looking at the record as a whole, as the courts did in the cases that I've discussed, they come to the determination that there is sufficient other competent admissible evidence, just as in this case, as I went over. And where would that sufficient competent admissible evidence be in a nutshell? In a nutshell, it would be they evaluated petitioner's own testimony, they evaluated witness testimony, they evaluated the work status reports, they evaluated the medical treatment records. Is there any question about the admissibility of the work status reports? Excuse me? No, no. Can you repeat that? Is there any question about admissibility of the work status reports? No, there is not. Okay. So succinctly, that's your argument, right? Succinctly, I believe that the commission decision was fully supported by the admissible evidence in the record, that the commission was proper in finding that petitioner failed to meet his burden, he failed to prove that he sustained an accident arising out of it in the course of his employment, failed to prove that there is a causal connection that existed between his condition of well-being and his employment. I believe that that is fully supported by the admissible evidence in the record. Okay. I think we understand your case. Thank you, counsel. We have time to reply. Counsel, you may respond. Good morning, Your Honor. This is Michael Rasek. I'm here on behalf of the plaintiff's affilee, Mr. Polk. The commission really looked upon two things, and those are the two things at issue. I'll take them in the same order counsel did. The first was the work reports. The commission held that the work reports showed that Mr. Polk did not use a jackhammer very often, and the obvious problem with the work reports is that they only covered four years, and that even Mr. Armstrong, the supervisor, admitted that even for those four months, I think it's at page 174 of the record, even those four months don't cover all the work that Mr. Polk did. Mr. Polk was working on other jobs other than the ones that Mr. Armstrong was reporting about. So to say for the commission to conclude that the work records showed that Mr. Polk did not use the jackhammer is just wrong. Even if he didn't use it for four months, it comes out to about one and a half percent of his tenure with the city of Chicago, and all the doctors, I think everyone agreed that trauma, even Dr. Levin agreed that trauma is a cause of CAD, the dissection. Let me ask you this. I have this correct. Dr. Levin will pay, and I believe that there was a four-way gap between the last time the What did he get the idea there was a four-way gap? I don't know where that came from, except to think that maybe Dr. Levin seemed to think that the first symptoms were his loss of vision. That's the only place I can see where the doctor came from. But that would contrast with her testimony that even she admitted that there was a dissection that occurred when Mr. Polk first began feeling the pain in his jaw, the first symptoms of the carotid artery dissection pain in the jaw. He felt that in August, and the doctors, I think, all agreed that then the dissection will eventually lead to a clot, and the clot is what caused the stroke to occur on October the 9th. So the timeline fits in with what everybody says. All the doctors say, even Levin. First you have the dissection, and then you have some period of time that goes past, about two weeks, that leads to that you then have the stroke. So really what we're talking about, to summarize it, is what causes the dissection? That's correct. Okay. And what is your medical evidence that a dissection is caused by work-related trauma? All three or four of the treaters said that his dissection was caused by the trauma. Dr. Kramer specifically said that jackhammer use is a recognized cause of carotid artery dissection because of the continual vibration. Dr. Gohe, Dr. Schultz, and even Dr. Wang all said that this accident was related to his use of the jackhammer. Dr. Kramer described it as saying that you had the repetitive trauma from use of the jackhammer was a cause, and when he was hit in the head with the jackhammer in August, that was possibly a secondary cause. But Dr. Kramer said specifically that if we don't have the history of repetitive trauma for 24 years, we're not going to have a secondary issue because presumably there's a change to the cause. Let's assume for the moment you have some legitimate arguments on work records, but the commission hung its head on credibility issues, and I'd like your response to this. Knowing the claimant at various times denied ever smoking, and later on there were admissions he smoked several packs a day, he denied any drug use, but then I think somewhere in the records admitted to marijuana and occasional cocaine use. So they held that against him on the credibility issue. So what are we to do with that? Also weightlifting, I believe. And weightlifting. Which is a known potential cause of dissection. Dissociation. Dissociation is probably the best word. The credibility issues, I have to try to non-string these if I can. The circuit court noted that the smoking issue was less than inconsistent. The only places in the record where he was asked if he smoked, where he provided the information concretely, where he said he did smoke, Mr. Armstrong said he never saw him smoke, the same person twice put this very odd history of smoking. But nobody said, nobody offered the opinion that his carotid artery dissection was caused by smoking. All that Dr. Levin could say is that it can cause, if I remember correctly, vasculitis. Vasculitis doesn't cause a dissection. As to the weightlifting, Dr. Levin said weightlifting is, potentially it's related to dissection. But he wasn't weightlifting. It stopped. Two months on, two months off. And there was no suggestion that it, nobody, no one said that that was the cause of his dissection. What about the drug use? And the drug use, he tested negative for cocaine, so we know that's not an issue. And even if he had, Dr. Kramer said that causes hemorrhagic stroke, and he didn't have hemorrhagic stroke. He had an infarct, he had a blockage. And no one said that the marijuana caused a dissection of the artery or caused a clot. It's just not there. There's no evidence to that. What the commission hung its hat on, it's clear, was Dr. Levin's testimony. And that is the inconsistency that the commission was really, thought it was looking at. It said that Levin said there was no trauma. There was no incident where he was hit on the head. And I know that because I saw that. And the only reason Dr. Levin can say that is I saw that in Dr. Allen's report. Well, I'm not sure that the city is quite ready to admit it, but that report, Dr. Allen's report was clearly inadmissible. It never should have come in. And yet that was the only basis for Levin's opinion. And the Dugan case said you can rely upon hearsay if you're an expert witness, which is what Levin was. But Dugan said you cannot rely upon a report prepared by someone else who is also a litigation expert. And that's all that Allen was. You know, my difficulty with the commission's decision as it relates to Allen's report goes a little bit deeper. There isn't any question that Dr. Levin could rely upon what's in a report in formulating her opinion. But the commission could not rely on what's in that report to establish the truth of the matters contained therein. And they indicated in their decision petitioners specifically denied to Dr. Allen on June 30, 2008, that he was hit in the head with a jackhammer, yet he reported to Dr. Levin that he had been. So the commission has accepted what's in Dr. Allen's report to establish the truth of what's in the report. And that's not the way, I mean, Wilson v. Clark doesn't suggest in any way that what the expert relies on comes in as substantive evidence. It's only to establish the basis of the expert's opinion to determine whether it has any weight. So the way I read this, they did in fact accept it as true and admitted it as substantive evidence. Now comes the question is, is it harmless? It would appear to be the linchpin of the commission's decision because that's almost all they talk about. And they specifically quote Dr. Levin's reference to Dr. Allen's report. And before I go further, I respectfully disagree with Your Honor. I believe Levin says that one expert cannot not rely upon a litigation report prepared by another expert. I would disagree with that. An expert can rely upon almost anything that's customarily relied upon in the field. And if Dr. Allen had been a treating doctor, surely she could have relied upon it. But he's another expert that they hired. I think the problem probably would be because he'd be afraid to be caught up on cross-examination because he had no basis for saying that there was no trauma from the jackhammer. So that's why I wanted to add that. At least that's my position on that. Let's play with that a little deeper analysis of Justice Hoffman. If you think about it or try to think about what they're really trying to say, Well, we can just know what the supposed expert relied on, but we can't use what he or she relied on as substantive evidence. Correct. But let's think back. How do you know whether to rely upon or credit an expert witness unless the underlying foundation of the expert's opinion has some substance? And in this case, it can't have any substance because it's hearsay. Well, that's not the point. If an expert testifies that, in my opinion, X, and on cross-examination under Wilson v. Clark, he said, What's the basis of your opinion? And the expert said, Because I consulted with the entrails of chickens. In that particular case, we wouldn't accept that the consultation of entrails of chickens is true. We'd discount it because it's nonsense. But if an expert says, I consulted a report that did a study, this, that, and the other thing, the only thing we're making a determination is whether an expert would reasonably rely on the report in order to formulate their opinion. We're not suggesting that it comes in as that the report is accurate or it's true. It's just reasonable to rely on it. And so then we judge the expert's opinion. I don't think what the expert relies on ever comes in as substantive evidence in its own right. And I agree with Your Honor's analysis. But Your Honor used the example of an expert can rely, can dig up a report. Well, a report that an expert can rely on is an open argument. I understand what your argument is. Your argument is it was prepared in anticipation of litigation, and therefore the expert could not rely on it. Correct. But that's not what Justice Holder and I are talking about. We're talking about the general concept in Wilson v. Clark as to whether what they rely on comes in as substantive evidence or doesn't. I suggest it doesn't. I was maddering it does not because it is hearsay. And here we know in part that the commission must have relied upon Levin's testimony about Dr. Allen for the simple reason that this case was sent back to the commission twice by the circuit court and basically said, get it right. At least tell us why you're doing this. They did second time up. They did not still explain their credibility analysis, which is why it was sent back. But the commission never even responds to the fact that the arbitrator said that Allen's report has nothing to do with this case and Levin should not have that testimony. Let me ask you this. Following up on this. Follow up with me. Go ahead. The commission never even looked at it. The commission assumed, as far as I can tell, because they didn't address it. They assumed that Dr. Allen's testimony was true. They don't address it, so they must have assumed it was there. As city council said, they relied upon the whole record. Well, according to the commission, the whole record included everything Levin said, which included Allen's report. And they didn't even understand it was not properly there. Okay. Assuming that that's the lead, is there any evidence left? No. Because the only other evidence is the work records. I mean, no one said there was a different question. We have testimony by your client. Yes. And it does seem that the record is replete with finding it incredulous. The findings that he was not credible had to do with his testimony about how often he used the work hammer and whether he was hit in the head by a jackhammer. The only other thing that's left is the smoking issue, and no one said that had anything to do with the outcome. Well, let's say he's not found credible on those. He was also found not credible in terms of smoking history. Do you disagree with inconsistent statements made in medical intakes? And then I would disagree with the record doesn't show that. They called it that, but it doesn't show that. In the places where there was supposed to be an inconsistency, one of the inconsistencies was that he denied recent trauma. It wasn't recent trauma. When he was asked that, when he went in with the blindness, first place, he didn't think of it as trauma. Nobody thought being hit in the head with a jackhammer was trauma. They laughed it off. It was busted. They didn't recall it. And it wasn't recent. It was, by that time, four more weeks old. How significant is the dispute as to the amount of time he used the jackhammer when you compare his testimony to Clayton Armstrong's testimony? That's pretty significant. Twenty-four years, as opposed to Clayton Armstrong's review of four months of work records, it's about one and a half percent. And as I mentioned, Armstrong even agreed, my records don't show all of his use of it. I don't have records as to his use of it. Your client testified that he used it eight hours a day. And the records, according to Clayton Armstrong, established he used it from 45 minutes to an hour, up to two hours. Up to two hours. Now, and that's based on the records that were actually there. So, you know, my question is, doesn't that raise a red flag for the commission as to whether this guy's a truth teller? No, because they're not based upon the records. I'm trying to answer this correctly. Armstrong's testimony were based upon the records he had for that four months. But those records were not all of the chops. No, I understand that. But your client testified, I use a jackhammer eight hours a day. And clearly from those records, he doesn't use the jackhammer eight hours a day. He may have used it eight hours a day on some days when Clayton Armstrong didn't have the records. Exactly. But he didn't use it eight hours a day for the days that he did have the records. And it seems as though your client was trying to gild the lily of it. And he did say, respectfully, he did say, no one said how about this day, how about this day. He just said he normally used a jackhammer two hours, one hour, two hours, four hours. If I remember right, sometimes as much as eight hours. But nobody pinned him into that four months. So you didn't ask him about that. So there is not necessarily a conflict there. I guess you can call it one, but there ought to be a direct correlation between I said I did something and somebody else said on that day you did not do that. And that does not exist with respect to Armstrong's testimony. Dr., let me ask you this. Justice Holdren invited you to delve deeper into the potential admissibility of the report by Dr. Levin. And let me just ask you this abstract question. Can a statement made by a claimant in a medical record that is contrary to his position at the hearing, could that commit as a statement against interest? Yes. I can't disagree with that. Doesn't it depend on who is testifying to it? I'm sorry? Doesn't it depend on who is testifying to it? No, I'm sorry. I'm assuming that the foundation has been ready for this. Well, then you have to be Dr. Allen. Yes. Couldn't be Dr. Levin. Correct. Exactly. I'm sorry. I guess that's in the abstract. You're right. Completely. Once I get some facts, I'm going to change my opinion. But generally speaking, if there's a foundation for it that's properly laid, well, of course it comes in. If I told my doctor I never drink and it turns out I told him at the time I did drink, sure. But I'm looking at it. There's no just my point here. There just isn't a foundation. That's what the circuit court judge said. There's no foundation. That's what the arbitrator said. Ironically, nobody can defend Dr. Levin. Even the city abandoned Dr. Levin. After going to great trouble to introduce all that testimony and made a point of it down below, now they've walked away from it and said, oh, it doesn't matter. It mattered when they poured gin. But before your honor, it doesn't matter. I've got some problems with that. I mean, I'll let the court draw its own conclusions, obviously. Unless the court has further questions. Thank you for your attention. Thank you. Thank you, counsel. Counsel, you have five minutes to reply. Thank you, your honor. I'd just like to address, as opposing counsel brought up the work status reports, to those that the claims do not show the entirety of the work, Mr. Armstrong testified that he had every date that petitioner operated the jackhammer or the rotohammer. And so those were noted on the reports. For the days that there were notations while the petitioner was working, he had other job duties. It's not that he necessarily was even using the jackhammer. But more importantly, it's the petitioner's burden to prove how often he used the jackhammer. And those work status reports showed the times that he used them in that amount of time. And the commission determined that four months was enough to determine that he hadn't used the jackhammer as much as he claimed he had, which is in their discretion. But you're right that, as your honor mentioned, the credibility wasn't just based solely, the credibility issue with petitioner wasn't based solely on the work status reports. It was based on assessment of his own testimony, how often he claimed he used it, the conflicting treatment records, the histories that he provided that were conflicting regarding drug use and smoking. All of these were taken into consideration. And that's what the court relied upon when coming to their determination that petitioner was not credible. Even if you, as we said, even if you pull out Dr. Levin's statement, again, I will stress that opposing counsel is overemphasizing the degree to which the commission claims relied upon Dr. Levin's statement. It was all of these things that came into consideration when determining if petitioner was credible or not. So what do you think the degree of reliance on Dr. Levin's report was? I think, your honor, I think as shown by the extensive commission decision, everything they've talked about that we've went over in detail and the fact that they mentioned it as furthermore, as just one other thing, one small thing, that it is that they did not, it is not the linchpin that opposing counsel makes it out to be, that there is sufficient admissible evidence in the record that the commission relied upon, thoroughly evaluated and assessed as it is their job to come to their determination, and that determination was that petitioner failed to meet his burden and prove his claims, and that their decision was not against the manifest weight of the evidence. In conclusion, I respectfully request that this court reverse the Cook County Circuit Court decision dated 6-10-2015 and reinstate the commission decision dated 11-3-2014. Very good. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter this morning. I'll take my reprisement and written disposition shall issue. Thank you.